Filed 12/13/21  In re K.A. CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re K.A. et al., Persons Coming Under the Juvenile Court Law. | B313446 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DORA A. et al.,<br><br>Defendants and Appellants. | (Los Angeles County Super. Ct. Nos. 18CCJP04391A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Marguerite Downing, Judge.  Conditionally affirmed with directions.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant Dora A.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant Derraille C.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Aileen Wong, Senior Deputy County Counsel, for Plaintiff and Respondent.

———————————————————

**INTRODUCTION**

Dora A., mother of seven-year-old K.A. and four-year-old D.C., and Derraille C., father of D.C., appeal from the juvenile court's orders terminating their parental rights under Welfare and Institutions Code section 366.26.[1]  Dora and Derraille contend the juvenile court and the Los Angeles County Department of Children and Family Services failed to comply with the inquiry requirements of the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and related California law.  We agree and therefore conditionally affirm the juvenile court's orders terminating Dora's and Derraille's parental rights, with directions to ensure the juvenile court and the Department comply with the inquiry and notice provisions of ICWA and related California law.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.      *The Dependency Proceedings*

In July 2018 the Department removed K.A. and D.C. from the home of Dora and Derraille and filed a section 300 petition alleging the children came within the jurisdiction of the juvenile court because of, among other things, Dora and Derraille's history of violent altercations with one another.  In September 2018 the court sustained the petition, declared the children dependents of the court, and removed them from Dora and Derraille.

 After holding six- and 12-month review hearings, the juvenile court held an 18-month review hearing in September 2020.  At that hearing the court terminated reunification services for Dora and Derraille and set a selection and implementation hearing under section 366.26.  The court held the section 366.26 hearing on June 18, 2021.  Having previously ordered adoption as the permanent plan, the court found the children adoptable, terminated Dora's and Derraille's parental rights, and transferred custody of the children to the Department for adoptive planning and placement.  Dora and Derraille timely appealed.[2]

B.      *Proceedings Relating to ICWA*

For the detention hearing in July 2018, Dora filed a Parental Notification of Indian Status form (ICWA-020) on which

---

[2]      Derraille does not purport to have Indian ancestry, but adopts Dora's contentions on appeal.  "Non-Indian parents have standing to raise issues of ICWA compliance on appeal." (*In re T.G.* (2020) 58 Cal.App.5th 275, 291.)

she checked the box beside "I am or may be a member of, or eligible for membership in, a federally recognized Indian tribe." Where the form asked for the name of the tribe or band, Dora wrote, "Not sure." At the detention hearing she told the juvenile court she had Indian ancestry through her deceased maternal grandmother, Maybelline Johnson, who was "actually Native American." Dora said that her grandmother had been born in Texas, but that any record of her birth was lost in a house fire. The court ordered the Department to "follow up" on whether ICWA applied to the children through Dora.

In August 2018 the Department followed up with Dora about her Indian ancestry, and she again said she believed she had Indian ancestry "on her mother's side of the family," but did not know what tribe. The Department sent notices to the Secretary of the Interior and the Bureau of Indian Affairs (BIA). The notices included Dora's mother's name and address, but no name or other information for Dora's maternal grandmother, the individual through whom Dora claimed Indian ancestry, or any of Dora's other biological relatives.

In a last minute information filed for the jurisdiction hearing in September 2018, the Department reported it had received a response from the BIA stating that "tribal affiliation cannot be determined at this time due to insufficient information or an identified tribe." At the jurisdiction hearing the juvenile court found it had "no reason to know that the Indian Child Welfare Act applies or that these are Indian children."

In a report filed for the section 366.26 hearing, the Department stated that in early June 2021 it had again interviewed Dora "regarding her ICWA status" and that Dora said, "I don't know the tribe, I don't know anything. I grew up in

4

the [dependency] system, so I don't know." When in that interview the social worker asked Dora if there were any relatives who might know something more, Dora answered (as recorded in the Department's report): "No, no one else would know. All I know is that my grandfather['s] (biological) name is Edwardo Romero. I know my mother is 26% Native, Indigenous American, Mexico. You know how there are different regions? I'm Indigenous America and Northern American."[3]

In its report, the Department also stated it had sent "updated ICWA notices" to the Secretary of the Interior and the BIA. Copies of the notices were attached to the report. The notice for D.C., dated June 4, 2021, contained (and omitted) the same information concerning Dora's relatives as the Department's earlier notice. The notice for K.A., dated June 11, 2021, contained even less: It did not provide any information for Dora's mother. At the section 366.26 hearing, the juvenile court stated, regarding both K.A. and D.C., the court "does not have a reason to know that this is an Indian Child, as defined under ICWA, and does not order notice to any tribe or the BIA."

## DISCUSSION

A. *Applicable Law*

"ICWA provides: '"In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child

---

[3] The record suggests Dora may have been referring to information in "screenshots from Ancestry.com" she provided to the Department.

shall notify the parent or Indian custodian and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention." [Citation.] This notice requirement, which is also codified in California law [citation], enables a tribe to determine whether the child is an Indian child and, if so, whether to intervene in or exercise jurisdiction over the proceeding.' [Citations.] 'ICWA reflects a congressional determination to protect Indian children and to promote the stability and security of Indian tribes and families by establishing minimum federal standards a state court must follow before removing an Indian child from his or her family.'" (*In re Y.W.* (2021) 70 Cal.App.5th 542, 551; see 25 U.S.C. §§ 1902, 1912(a); § 224.3, subd. (a); *In re Isaiah W.* (2016) 1 Cal.5th 1, 5; *In re T.G.* (2020) 58 Cal.App.5th 275, 287-288; *In re K.R.* (2018) 20 Cal.App.5th 701, 706.)

"'"ICWA itself does not impose a duty on courts or child welfare agencies to inquire as to whether a child in a dependency proceeding is an Indian child. [Citation.] Federal regulations implementing ICWA, however, require that state courts 'ask each participant in an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child.' [Citation.] The court must also 'instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.'"' [Citations.] In addition, ICWA allows states to provide "'a higher standard of protection to the rights of the parent or Indian custodian of an Indian child than the rights provided under' ICWA,'" and the California Legislature has imposed on the court and child protective agencies "'an affirmative and continuing duty to inquire whether a child,' who

6

is the subject of a juvenile dependency petition, 'is or may be an Indian child.'"'" (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 551; see 25 C.F.R. § 23.107(a); § 224.2, subd. (a); *In re J.S.* (2021) 62 Cal.App.5th 678, 685-686; *In re D.S.* (2020) 46 Cal.App.5th 1041, 1048.)

"Section 224.2, subdivision (b), requires the child protective agency to ask ""'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" [Citations.] If the court or child protective agency 'has reason to believe that an Indian child is involved in a proceeding,[4] but does not have sufficient information to determine that there is reason to know that the child is an Indian child,' the court and the Department 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' [Citations.]  If the further inquiry 'results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply.' [Citations.]  The continuing duty to inquire whether a child is or may be an Indian child 'can be divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" (*In re Y.W.*, *supra*, 70 Cal.App.5th at pp. 551-552; see 25 U.S.C. § 1912(a); §§ 224.2, subd. (e), 224.3; *In re Charles W.* (2021)

---

[4]      "There is reason to believe a child involved in a proceeding is an Indian child whenever the court, social worker, or probation officer has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe."  (§ 224.2, subd. (e)(1).)

66 Cal.App.5th 483, 489; *In re J.S.*, *supra*, 62 Cal.App.5th at
p. 686; *In re T.G.*, *supra*, 58 Cal.App.5th at p. 290; *In re D.F.*
(2020) 55 Cal.App.5th 558, 566; *In re D.S.*, *supra*, 46 Cal.App.5th
at p. 1052; Cal. Rules of Court, rule 5.481(a)(1), (4).)

"'"The juvenile court must determine whether proper notice
was given under ICWA and whether ICWA applies to the
proceedings."' [Citation.] 'If the court makes a finding that
proper and adequate further inquiry and due diligence as
required in [section 224.2] have been conducted and there is no
reason to know whether the child is an Indian child, the court
may make a finding that [ICWA] does not apply to the
proceedings, subject to reversal based on sufficiency of the
evidence.'" (*In re Y.W.*, *supra*, 70 Cal.App.5th at p. 552; see
§ 224.2, subd. (i)(2); *In re A.M.* (2020) 47 Cal.App.5th 303, 314;
*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050; Cal. Rules of Court,
rule 5.481(b)(3)(A).)

> B.     *The Juvenile Court and the Department Did Not*
>        *Comply with ICWA's Inquiry Requirements*

Dora contends the Department did not conduct an adequate
initial ICWA inquiry because it did not ask extended family
members, including Dora's mother, whether the children may be
Indian children.  She also contends her assertion of Indian
ancestry through her maternal grandmother triggered the duty of
further inquiry, which the Department failed to comply with by
not, at a minimum, interviewing Dora's mother and including in
the notices sent to the Secretary of the Interior and the BIA all
known information concerning Dora's maternal relatives,
particularly concerning her maternal grandmother.  As a result,
Dora contends, the juvenile court erred in finding at the section

366.26 hearing that ICWA did not apply. Dora is right about all this.

The Department does not dispute that its duty of initial inquiry required it to attempt to speak with Dora's mother (see 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's "grandparent"]; § 224.1, subd. (c)), that it never did so, or that its notices to the Secretary and the BIA were defective as described. The Department does argue its duty of further inquiry was "never triggered" because Dora "never provided any tribal affiliation," but it cites no authority suggesting a parent's inability to provide such information relieves the Department of the duty of further inquiry where it has reason to believe an Indian child is or may be involved. Dora's assertion of Indian ancestry through her maternal grandmother satisfied the "reason to believe" standard. (See *In re T.G.*, *supra*, 58 Cal.App.5th at pp. 295-296 ["it is difficult to understand how, as a matter of plain meaning, a parent's statement that she has been told she has Indian ancestry through a particular tribe *or a specific relative* . . . does not . . . provide 'a reason to believe' the child may be eligible" for tribal membership, italics added].)

The Department also argues its inquiry was adequate because it "was not obligated '"to cast about" for investigative leads'" after Dora "stated no relative had any information regarding her heritage." But whatever Dora may have purported to know about what others would know, she had previously asserted, unequivocally, she believed she had Indian ancestry through her mother's side, and the Department had her mother's name and contact information. The Department also had the name of the specific relative, her maternal grandmother, through whom Dora believed she had Indian ancestry. Under those

9

circumstances, speaking with Dora's mother and putting her grandmother's name on the notices it sent the Secretary and the BIA would hardly have been casting about for investigative leads.

Like the parties, we construe the juvenile court's finding at the section 366.26 hearing it had no reason to know K.A. and D.C. were Indian children as a finding ICWA did not apply. (See *In re D.S.*, *supra*, 46 Cal.App.5th at p. 1050.) And "[w]here, as here, the juvenile court finds ICWA does not apply to a child, '[t]he finding implies that . . . social workers and the court did not know or have a reason to know the children were Indian children and that social workers had fulfilled their duty of inquiry.'" (*In re J.S.*, *supra*, 62 Cal.App.5th at p. 688.) Because the Department did not fulfill its duty of inquiry, substantial evidence did not support the court's finding ICWA did not apply.

Finally, the Department argues any error was harmless because on appeal Dora has not represented that any of her relatives would provide "information indicating the children were Indian children." We recently rejected this overly broad view of harmless error where the Department fails to comply with its ICWA duty of inquiry. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 558.) As we explained, "the point of the statutory requirement that the social worker ask all relevant individuals whether a child is or may be an Indian child" is "to obtain information the parent may not have. It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim." (*Id.* at p. 556.) For this reason, a parent "does not need to assert he or she has Indian ancestry to show a child protective agency's

10

failure to make an appropriate inquiry under ICWA and related law is prejudicial." (*Ibid.*)

## DISPOSITION

The juvenile court's orders terminating the parental rights of Dora and Derraille are conditionally affirmed. The juvenile court is to ensure the Department complies fully with the inquiry and notice provisions of ICWA and related California law. The juvenile court is also to determine whether the requirements have been satisfied and whether K.A. and D.C. are Indian children. If the court finds they are, it is to conduct new hearings in compliance with ICWA and related California law.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.